JOVITA PEREZ, ET AL. *v.* UNITED STATES (No. 4827)[1]

---

[1] C. A. D. 588.

United States Court of Customs and Patent Appeals, March 22, 1955

*Lamb & Lerch (John G. Lerch* and *David A. Golden* of counsel) for appellants.
*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument December 9, 1954, by Mr. Golden, Mr. Lerch, and Mr. FitzGibbon]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Associate Judges

JOHNSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Third Division, pursuant to its decision, C. D. 1633, overruling the protests filed by appellant against the rate of duty applied by the Collector of Customs on nine importations of flavoring syrup which were imported from Mexico.

The imported merchandise consists of flavoring syrup which is composed of a mixture of sugar, water, and a small amount of flavoring matter. The following portion of a laboratory report, which was made by the United States Customs Laboratory of Laredo, Texas, and submitted in evidence as Exhibit 3, is considered to be representative of the composition of all of the imported merchandise:

    \*      \*      \*      \*      \*      \*      \*

One sample of dark-brown syrup.

| | |
|---|---|
| Direct polarization _____(minus) __ | 13.8 degrees |
| Sucrose_____ | 4. 2% by weight. |
| Reducing Sugars_____ | 57. 1%  "     " |
| Total Sugars_____ | 61. 3%  "     " |
| Weight per gallon, in air, at 20° C_____ | 10.820 lbs. |

    \*      \*      \*      \*      \*      \*      \*

The Collector of Customs classified the imported syrups under paragraph 501 of the Tariff Act of 1930, as amended by the Peruvian Trade Agreement, T. D. 50670, by virtue of the mixed material clause of paragraph 1559 of the Tariff Act of 1930.

Paragraph 501, as amended, reads as follows:

| Description of Article | Rate of Duty |
| --- | --- |
| Sugars, tank bottoms, sirups of cane juice, melada, concentrated melada, concrete and concentrated molasses, testing by the polariscope not above 75 sugar degrees, and all mixtures containing sugar and water, testing by the polariscope above 50 sugar degrees and not above 75 sugar degrees. | 0.6421875¢ per lb. |
| And for each additional sugar degree shown by the polariscopic test. | 0.0140625¢ per lb. additional, and fractions of a degree in proportion. |

The mixed material clause of paragraph 1559 reads as follows:

* * * and on articles not enumerated, manufactured of two or more materials, the duty shall be assessed at the highest rate at which the same would be chargeable if composed wholly of the component material thereof of chief value; * * *

It can readily be seen from a comparison of the laboratory report of the imported merchandise with the wording of paragraph 501, *supra*, that the imported merchandise is not enumerated in said paragraph 501 since it is a mixture of sugar and water having a negative polariscopic reading and not (1) *a mixture containing sugar and water, testing by the polariscope above 50 sugar degrees and not above 75 sugar degrees*, or (2) *a sugar * * * testing by the polariscope not above 75 sugar degrees*.

Therefore, since the imported merchandise was not specifically enumerated in paragraph 501, *supra*, the rate of duty on the imported merchandise was determined to be .99375 cent per pound by the Customs Collector in accordance with the following reasoning: Namely, the imported merchandise was not specifically enumerated in the Tariff Act of 1930, and since the mixed material clause of paragraph 1559 *supra*, states as quoted above, the merchandise was treated as though refined sugar having a polariscopic reading of 100 degrees was the component material of chief value. Thus for the first 75 degrees the rate of duty was assessed at .6421875 cent per pound, and for the additional 25 degrees (25 times .0140625) or .3516625 cent per pound was added to give a total rate of duty of .99375 cent per pound. This liquidation of the imported merchandise was sustained by the Customs Court.

In addition to the above rate of duty the Customs Collector also assessed a sugar tax of .5144 cent per pound on the sugar content only of the mixture under section 3500 (3) of the Internal Revenue Code. Appellants acquiesce in this particular assessment; therefore no further reference will be made to it.

However, appellants do strenuously contend that the assessment of duty of .99375 cent per pound made by the Collector of Customs is in error, and that the correct rate of duty should be .6421875 cent per pound for the total weight of the imported merchandise, or

alternatively, if the rate of .99375 cent per pound is to be applied, it should be applied only to the weight of the sugar content of the mixture exclusive of the weight of the water.

Both parties agree that the imported merchandise was properly classified under paragraph 501 of the Tariff Act of 1930, as amended, by virtue of the mixed materials clause of paragraph 1559. However, as can be seen from the foregoing facts, they differ as to the rate of assessment.

Thus the sole issue before us is the determination of the rate of duty on the imported merchandise within paragraph 501 by virtue of the mixed material clause of paragraph 1559 of the Tariff Act of 1930.

We therefore proceed to analyze the testimony in regard to the imported merchandise in the light of paragraphs 501 and 1559, *supra*, in order to determine whether the liquidation made by the Collector of Customs, which was sustained by the Customs Court, should be sustained.

Since the mixed material clause of paragraph 1559, *supra*, was relied on, we must first determine what is the component of chief value of the imported sugar-water mixture. As can be seen from the above laboratory report, there can be no doubt that it is broadly sugar. However, further inspection of the laboratory report shows the sugar to consist of both sucrose and reducing sugars. We must therefore determine which of these sugars is the component of chief value in the imported merchandise, and the rate of duty must be assessed accordingly, as will be explained in detail hereafter.

It is to be noted that paragraph 501 refers to *sugars * * * testing by the polariscope not above 75 sugar degrees* and *mixtures containing sugar and water, testing by the polariscope above 50 sugar degrees and not above 75 sugar degrees*. We feel that these qualifying phrases, pertaining to polariscopic readings of sugar, cannot be divorced from the words sugar. The significance of the polariscopic readings which qualify the words sugar must therefore be considered. It has been held by this Court that the polariscopic test shows the percentage of sucrose in a sugar. *Cresca Co. (Inc.) v. United States*, 15 Ct. Cust. Appls. 105; *LaManna, Azema and Farnan, Inc. v. United States*, 39 C. C. P. A. (Customs) 44. More specifically, sucrose will always give a positive polariscopic reading.[1] Therefore, if sucrose is the only component of the mixture which affects the polariscopic reading thereof, a positive polariscopic reading will be obtained for the mixture. However, in the instant case, the polariscopic reading of the mixture is a negative quantity. It was brought out in the oral arguments before the Court that the reason for obtaining the negative polariscopic reading was because of the presence of reducing (invert) sugars in the sugar—water mixture. The higher the concentration of invert sugar

[1] Allen, A. H., *Commercial Organic Analysis*, Vol. I, P. Blakiston's Son & Co., Philadelphia, 1908, pages 248, 252, 253, 255.

in a sugar-water mixture, the lower or more negative will be the polariscopic reading since invert sugars give a negative polariscopic reading.[2] Invert sugars, if they are the chief component of a sugar-water mixture which also contains sucrose, may give a resultant negative polariscopic reading to the mixture.[3] In the imported merchandise the concentration of invert sugar is of sufficient magnitude to give a negative polariscopic reading which overcomes a positive polariscopic reading attributable to the sucrose and thus gives a resultant negative polariscopic reading to the mixture. Therefore, as indicated by both the above cited polariscopic test and chemical analysis, the invert sugar, and not the sucrose, is the component of chief value of the imported sugar-water mixture.

Since the component of chief value of the mixture is not sucrose but reducing or invert sugars, and since the reducing sugars in the mixture under consideration cannot possibly test by the polariscope above 75 sugar degrees, but must give a negative polariscopic reading to overcome a positive reading attributable to the sucrose, we think that the component of chief value of the imported mixture is sugar testing by the polariscope not above 75 sugar degrees.

We are therefore of the opinion that the imported mixture of sugars and water should be assessed under paragraph 501 by virtue of the mixed material clause of paragraph 1559 as if it were composed wholly of a sugar testing by the polariscope not above 75 sugar degrees. The rate of duty should therefore be .6421875 cent per pound on the total weight of the imported merchandise.

We are of the opinion that the case of *LaManna, Azema, and Farnan, Inc., supra,* on which the Government relies, is distinguishable from the instant case. In the *LaManna* case the importation consisted of grenadine composed of sugar, water, and other constitutents, and was assessed at the rate of 20 per centum ad valorem under paragraph 1558 of the Tariff Act of 1930 by the Customs Collector. The appellant protested and contended that the imported article should have been classified under paragraph 501 by virtue of paragraph 1559, *supra,* as in this case. However, as appears from the *LaManna* case, no polariscopic reading of the grenadine was taken, nor was the mixture chemically analyzed for the purpose of determining its sucrose and reducing sugar content. In the *LaManna* case the issues were submitted for decision upon a *stipulation* that the grenadine consisted in chief value of sugar and that the sugar in the grenadine was *granulated* sugar in solution form. The court stated that granulated and refined sugar were essentially synonymous, and that refined sugar was 100 per cent sucrose. It was therefore held that the grenadine

---

[2] *Polarimetry, Saccharimetry, and the Sugars* Circular C-440, National Bureau of Standards, U. S. Department of Commerce, Government Printing Office 1942, pages 138, 563.

[3] Allen, A. H., *Commercial Organic Analysis,* Vol. I, P. Blakiston's Son & Co., Philadelphia, 1908, pages 260-261.

should be assessed at the highest rate applicable to sugars under paragraph 501. This would mean that the grenadine was to be assessed at a rate equal to that of sucrose having a polariscopic reading of 100 degrees. It is to be noted that in the present case there is no *stipulation* that the component of chief value is granulated sugar. On the contrary, it is positively shown to be reducing sugar.

For the foregoing reasons, the judgment appealed from is *reversed* and *remanded* for further proceedings not inconsistent with this decision.